# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| **STEPHEN SUTTON**, *on behalf of himself and all others similarly situated* )<br>)<br>)<br>      Plaintiff,      )<br>)<br>v.                                                      )<br>)<br>**COMMUNITY HEALTH SYSTEMS, INC.**, )<br>)<br>*a Delaware Corporation,*      )<br>*a/k/a CHS, Inc. and Dyersburg Ambulatory* )<br>*Corp,*      )<br>**CHSPSC, LLC**,      )<br>*a Delaware limited liability company,*      )<br>*f/k/a Community Health Systems*      )<br>*Professional Services Corporation,*      )<br>*a/k/a Dyersburg Ambulatory Corp,*      )<br>**KNOXVILLE HMA HOLDINGS, LLC**,   )<br>*a Tennessee limited liability company,*      )<br>*d/b/a Tennova Healthcare, LLC,*      )<br>*a/k/a Dyersburg Ambulatory Corp,*      )<br>**DYERSBURG HOSPITAL CORPORATION**,      )<br>)<br>*a Tennessee Corporation,*      )<br>*a/k/a Tennova Healthcare – Dyersburg*      )<br>*Regional, Dyersburg Regional Medical*      )<br>*Center, and Ambulance Service of*      )<br>*Dyersburg,*      )<br>**AMBULANCE SERVICES OF DYERSBURG, INC.**,      )<br>)<br>*a Tennessee Corporation,*      )<br>*f/k/a Dyersburg Regional EMS,*      )<br>*d/b/a Tennova EMS*, **and**      )<br>**DYERSBURG AMBULATORY CORP**,      )<br>)<br>*a Tennessee Corporation,*      )<br>)<br>      Defendants.      ) | No. 1:16-cv-01318-STA-egb |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Before the Court is the motion of Defendants Community Health Systems, Inc., ("CHSI"), CHSPSC, LLC ("CHSPSC"), Knoxville HMA Holdings, LLC ("Knoxville HMA"), and Dyersburg Ambulatory Corp. ("Dyersburg Ambulatory")[1] to dismiss Plaintiff Stephen Sutton's claims against them, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has filed a response in opposition (ECF No. 34), to which Defendants have replied (ECF No. 37), making the matter ripe for adjudication. For the reasons discussed below, the motion is **GRANTED** as to Dyersburg Ambulatory and CHSI and **DENIED** as to CHSPSC and Knoxville HMA.

**I.   BACKGROUND**

The following facts are gleaned from Plaintiff's complaint, which the Court accepts as true for the purposes of the instant motion. (*See* ECF No. 1; *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).) Plaintiff works as a paramedic at the Dyersburg Regional Hospital in Dyersburg, Tennessee in the emergency ambulance service. Paramedics and EMTs there often work twenty-four hour shifts, from 7:00 AM to 7:00 AM the following day. This lawsuit concerns a portion of these shifts called "on-call" time, typically lasting from 11:00 PM to 7:00 AM. During "on-call" time, Plaintiff and other employees are required to remain on the hospital campus and be close in proximity to their assigned "partner" and their assigned ambulance—close enough to be able to drive off in the ambulance within two minutes of receiving an

---

[1] Throughout this order, the Court uses the unadorned word "Defendants" to refer to the four defendants that are parties to the instant motion.

2

emergency call. If an emergency call comes in, they must respond to it thus. They are also required to perform other duties during "on-call" time, like answering questions from law enforcement and responding to other calls.

Plaintiff alleges that he and other similarly situated employees are only compensated $2.00 per hour during "on-call" time, which is below the minimum wage. He also alleges that Defendants do not count these hours toward the forty-hour work week, depriving employees of overtime pay that would otherwise be required by the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201, *et seq.* Finally, Plaintiff claims that he has personally suffered retaliation in the form of receiving pretextual negative performance evaluations and reduced hours after making numerous complaints to his superiors regarding the "on-call" time policies. On December 16, 2016, Plaintiff filed suit under the FLSA against six Defendants, on behalf of himself and others similarly situated. (ECF No. 1.) He included notices of consent signed by him and twenty-seven others. (ECF No. 1-10.) Since then, the parties have agreed to conditionally certify this case as a collective action under 29 U.S.C. § 216(b) (ECF No. 38) and eleven other individuals have opted in (ECF Nos. 41, 42, 44, 46, 48–53).

On February 21, 2017, Ambulance Services of Dyersburg, Inc. and Dyersburg Hospital Corporation filed answers (ECF Nos. 23 & 24), while the remaining Defendants filed the instant motion (ECF No. 25).[2] Defendants argue that they are not Plaintiff's employers within the meaning of the FLSA and should be dismissed from this action. Plaintiff responds that they are all "joint employers" and points to the FLSA's relatively expansive definition of the term.

---

[2] Five Defendants concede that Sutton and twenty-six of the initial opt-in plaintiffs are employees of Ambulance Services of Dyersburg, Inc. (ECF No. 26 at 2; *see* ECF No. 22 at 5.) Dyersburg Hospital Corporation denies that any of these plaintiffs are its employees, but has not joined in the instant motion. (ECF No. 26 at 2 n.2; *see* ECF No. 23 at 5.)

## II.     LEGAL STANDARD

### A.     12(b)(6) Standard

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).  Legal conclusions and unwarranted factual inferences, however, need not be accepted as true.  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim."  *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).  Under Federal Rule of Civil Procedure 8, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).  In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556

4

U.S. at 678.

### B. The Effect of Presenting Matters Outside the Pleadings

"Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "a court may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo*, 641 F.3d at 680–81 (internal quotation marks omitted).

Plaintiff points out that Defendants filed two sworn declarations along with their motion to dismiss and urges the Court to treat it as a motion for summary judgment. (*See* ECF Nos. 26-1 & 26-2.) If outside material is filed, a Court may choose not to consider it and continue to evaluate the motion under the 12(b)(6) standard. *See Travelers Prop. Cas. Co. of Am. v. Breeding Heavy Haulers, Inc.*, No. CIV.A. 7:09-124-KKC, 2012 WL 1029459, at *2 (E.D. Ky. Mar. 26, 2012); *see also Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). The Court finds it prudent to do so here.

### III. ANALYSIS

The purpose of the FLSA is to "correct labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . ." *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984). The Act requires

"employers to pay employees engaged in commerce a wage consistent with the minimum wage . . . and instructs employers to pay employees overtime compensation, which must be no less than one-and-one-half times the regular rate of pay, if the employee works more than forty hours in a week." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012). "The Supreme Court has indicated that the FLSA is to be construed liberally," *id.* (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)), and "Courts interpreting the FLSA must consider Congress's remedial purpose," *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015). The FLSA's definition of "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d).[3] In light of its remedial purpose, the FLSA defines "'employer' more broadly than the term would be interpreted in traditional common law applications." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (quoting *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam)).

### A. Joint Employment Standards Under the FLSA

A single individual may be employed by multiple employers at the same time. Department of Labor ("DOL") regulation 29 C.F.R. § 791.2 distinguishes between "separate and distinct employment," in which "two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee," and "joint employment," in which "employment by one employer is not completely disassociated from employment by the other employer(s)." 29 C.F.R. § 791.2(a). If a worker is found to be "jointly employed by two entities, each of [them] is responsible for complying with

---

[3] "[T]he term 'employee' means any individual employed by an employer." 29 U.S.C. § 203(e)(1). "'Employ' includes to suffer or permit to work." 29 U.S.C. § 203(g).

the FLSA." *Skills Dev. Servs., Inc. v. Donovan*, 728 F.2d 294, 300 (6th Cir. 1984). Whether joint employment exists "depends upon all the facts in the particular case." 29 C.F.R. § 791.2(a). Section 791.2 provides three situations "where a joint employment relationship generally will be considered to exist":

> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b).

### 1. Precedent within the Sixth Circuit

"Notwithstanding the regulation's seemingly straightforward language, courts have long struggled to articulate a coherent test for distinguishing separate employment from joint employment." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 766 (4th Cir. 2017), *petition for cert. filed*, No. 16-1449 (June 7, 2017). The Sixth Circuit "has not formulated or identified a test for determining whether a joint employment relationship exists in the context of the FLSA." *Politron v. Worldwide Domestic Servs., LLC*, No. 3-11-0028, 2011 WL 1883116, at *2 (M.D. Tenn. May 17, 2011). The court has spoken on joint employment in other contexts, however. In cases involving disputes between labor unions and employers, the Sixth Circuit has considered the following four factors: "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership." *Int'l*

*Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (quoting *Metro. Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 584 (6th Cir. 1982)).[4]

In *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 F. App'x. 587, 594 (6th Cir. 2009), the Sixth Circuit considered whether to allow aggregation of joint employees for the purposes of establishing Title VII's numerosity requirement. In its discussion, the court approvingly cited a Second Circuit case noting that "at least in the NLRB context, we have identified a variety of factors, such as exercise of authority to hire, fire, and discipline, control over pay and insurance, and supervision, which can bear on whether an entity, which is not the formal employer, may be considered a joint employer." *Id.* at 594 (6th Cir. 2009) (quoting *Arculeo v. On–Site Sales & Mktg., LLC*, 425 F.3d 193, 202 (2d Cir. 2005)). Defendants point out that several district courts in our circuit have used these three factors to evaluate joint employment in the FLSA context. *See Bacon v. Subway Sandwiches & Salads LLC*, 2015 WL 729632, at *4 (E.D. Tenn. Feb. 19, 2015); *Politron*, 2011 WL 1883116, at *2; *Keeton v. Time Warner Cable*, 2010 WL 2076813, at *2 (S.D. Ohio May 24, 2010); *see also Williams v. King Bee Delivery, LLC*, 199 F. Supp. 3d 1175, 1181 (E.D. Ky. 2016). Other district courts have used the test from the above labor cases. *Heard v. Nielson*, No. 1:16-cv-1002, 2017 WL 2426683, at *3 (S.D. Ohio June 2, 2017); *Barnett v. E-Waste Sys., Inc.*, No. 1:14-cv-908, 2015 WL 1757302, at *4 (S.D. Ohio Apr. 17, 2015). Additionally, in a previous case, this Court imported neither test, choosing instead to apply the DOL regulations directly. *Brown v. Creative Restaurants,*

---

[4] While these cases both dealt with labor disputes, they involved different federal causes of action. *See Int'l Longshoremen*, 927 F.2d 900 (Labor Management Relations Act); *Metro. Detroit Bricklayers*, 672 F.2d 580 (Railway Labor Act).

8

*Inc.*, No. 2:11-cv-2710-STA-cgc, 2013 WL 11043343, at *4 (W.D. Tenn. Feb. 19, 2013).

### 2. Other circuits

"The genesis of the confusion over the joint employment doctrine's application appears to be the Ninth Circuit's decision in *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983)." *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 135 (4th Cir. 2017). *Bonnette*'s four-factor test focused on the common law agency relationship and "derived from the test the Ninth and Fifth Circuits used to distinguish employees from independent contractors for purposes of the FLSA."[5] *Id.* In the years since, several circuits have found this test too restrictive in light of the FLSA's language, which "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *see Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2d Cir. 2003) ("[T]he four-factor test cannot be reconciled with the 'suffer or permit' language in the statute, which necessarily reaches beyond traditional agency law."). *But see Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 674 (1st Cir. 1998) (continuing to use the *Bonnette* test).

Several circuits have attempted to reconcile the *Bonnette* test with the language of the FLSA and DOL regulations. This has resulted in a proliferation of multi-factor tests. *See Salinas*, 848 F.3d 125 (4th Cir. 2017) (six factors); *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172 (11th Cir. 2012) (eight factors); *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012) (four factors); *Zheng*, 355 F.3d at 72 (2d Cir. 2003) (six

---

[5] The *Bonnette* test asked "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." 704 F.2d at 1469–70.

9

factors); *Torres-Lopez v. May*, 111 F.3d 633 (9th Cir. 1997) (thirteen factors). For example, the Fourth Circuit's recently formulated test considers the following six factors:

(1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;

(2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

(3) The degree of permanency and duration of the relationship between the putative joint employers;

(4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

(5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.[6]

*Salinas*, 848 F.3d at 141–42. While this test is more specifically tailored to the FLSA context, its factors are substantially similar to all three factors used in *Sanford* and three of the four used in

---

[6] The court stressed that this list is non-exhaustive and noted that "[t]o the extent that facts not captured by these factors speak to the fundamental threshold question that must be resolved in every joint employment case—whether a purported joint employer shares or codetermines the essential terms and conditions of a worker's employment—courts must consider those facts as well." *Salinas*, 848 F.3d at 142.

the Sixth Circuit's labor cases discussed above.[7]  These similarities speak to the continued relevance and usefulness of both tests used by district courts in our circuit.  Rather than adopt an out-of-circuit test, then, the Court will evaluate joint employment under the FLSA using the factors from *Sanford* and *Metropolitan Detroit Bricklayers*.

### B.     Joint Employment Analysis

#### 1.     "Shotgun pleadings"

Despite bringing suit against six different defendants, many of the allegations in Plaintiff's complaint do not differentiate between them by assigning particular conduct to particular actors.  In these instances, Plaintiff opts instead to collectively refer to them as "Defendants."  (*E.g.*, ECF No. 1 at 10 ("Defendants tell Mr. Sutton and similarly situated employees which work assignments to complete, when the assignments must be completed, and how work should be performed.").)  Defendants complain that this sort of "shotgun pleading" style fails to satisfy Federal Rule of Civil Procedure 8 by "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions . . . ."  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).  Defendants urge that "these allegations . . . should be disregarded or dismissed."  (ECF No. 26 at 10.)

Defendants rely solely on out-of-circuit precedent to support their contention, particularly the Eleventh Circuit's "thirty-year salvo of criticism aimed at shotgun pleadings."  *Weiland*, 792 F.3d at 1321.  "Defendant has not cited, nor is the undersigned aware of, any Sixth Circuit

---

[7] The only factor completely absent here is "centralized control of labor relations," which makes sense in the FLSA context, where labor relations are less relevant to the analysis. *Metro. Detroit Bricklayers*, 672 F.2d at 584.

11

precedent that permits dismissal of a 'shotgun' pleading without allowing the plaintiff to replead her case." *Young v. Donahoe*, No. 1:11-0105, 2013 WL 5332109, at *8 (M.D. Tenn. Sept. 20, 2013). "On the contrary, at least one district court in the Sixth Circuit has explicitly said that 'shotgun' complaints should not be dismissed." *Id.* (collecting authority). Notably, Defendants have chosen not to move for a more definite statement under Rule 12(e), and two other defendants decided to file answers rather than do so. (*See* ECF Nos. 23 & 24.) While Plaintiff's complaint could stand to have been more artfully drafted, the Court finds that its lack of specificity does not violate Rule 8.[8]

### 2. CHSPSC and Knoxville HMA

Plaintiff's allegations summarily, but sufficiently, satisfy *Sanford*'s three factors as to CHSPSC and Knoxville HMA. *See* 327 F. App'x. at 594. The complaint asserts that Defendants, collectively, have the power to hire and fire Plaintiff and others similarly situated. (ECF No. 1 at 10.) It also avers that "Defendants tell Mr. Sutton and similarly situated employees which work assignments to complete, when the assignments must be completed, and how work should be performed." (*Id.*) This implicates the third factor of *Sanford*, supervision. Finally, the complaint alleges that Defendants control the number of hours Plaintiff works, along with the method and rate of payment. (*Id.*)

Plaintiff also includes allegations specific to some Defendants. The complaint refers to "Defendant Knoxville HMA Holdings, LLC, d/b/a Tennova Healthcare, LLC, a./k/a. Dyersburg

---

[8] The Court will not, however, abide the complaint's "legal conclusion[s] couched as a factual allegation[s]." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see, e.g.*, ECF No. 1 at 13 ("Throughout the relevant time period each or all of Defendants exercised sufficient control over the terms and conditions of Plaintiffs' employment to qualify as employers and/or joint employers under the FLSA.").

Ambulatory Corp." as "Tennova" (*id.* at 4), and claims that "it sets and determines Mr. Sutton and similarly situated employees' sick time, paid time off, and time off policies, including but not limited to 'clock-in and clock-out' policies" (*id.* at 10). Plaintiff also alleges that Knoxville HMA "issued a June 10, 2016 memorandum discussing market rate hourly pay adjustments for EMTs and Paramedics, such as Mr. Sutton." (*Id.* at 12.) Defendants characterize this as a "'so what' allegation[]" and insist that the issuance of a memorandum does not suddenly make Knoxville HMA a joint employer. (ECF No. 26 at 11) Their argument misses the point: while this piece of evidence may not, standing alone, create a joint employment relationship, it provides indirect evidence that supports a reasonable inference that Knoxville HMA exercises some level of control over Plaintiff's pay. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). It also indicates interrelation of operations between companies, as Plaintiff alleges that multiple Defendants have control over the same functions, including pay.

Other allegations presented by Plaintiff have similar inferential relevance. Moving to CHSPSC, Plaintiff alleges that its "profile is included in the employee handbook as the affiliate, owner, operator, or manager of Mr. Sutton and similarly situated employees," and that it issued a "Best Practice Example- PRN Pool Process" document that discussed incentives for Plaintiff and other employees to sign up for additional shifts. (ECF No. 1 at 12.) More directly, Plaintiff asserts that CHSPSC owns and operates the hospital where Plaintiff works, which is relevant to the *Metropolitan Detroit Bricklayers* factors, and that it also "set and enforced" his "pay and time policies." (*Id.* at 10; *see* 672 F.2d at 584.)

Plaintiff has bolstered his general allegations regarding Defendants with specific allegations of conduct as to CHSPSC and Knoxville HMA. He has also referenced specific

13

evidence that has inferential relevance to several factors of the joint employment analysis. Accepting all of the allegations in the complaint as true, and construing them in the light most favorable to the non-moving party, the Court concludes that Plaintiff has pleaded facts sufficient to support a finding of joint employment under the FLSA for these two defendants.[9] The Motion to Dismiss is **DENIED** as to Defendants CHSPSC and Knoxville HMA.

### 3. CHSI

Contrastingly, the complaint contains zero specific allegations regarding Defendant CHSI. The Court is willing to accept Plaintiff's general allegations as to Defendants CHSPSC and Knoxville HMA because they are supported by several specific ones elsewhere in the complaint. Attempting to establish joint employment based solely on the general allegations, without more, is something quite different. The only specific mention of CHSI in the complaint merely alleges jurisdiction. (ECF No. 1 at 4.) Even with the benefits of the Rule 12(b)(6) standard, Plaintiff's complaint does not allege enough specific facts to support the contention that CHSI is a joint employer in this case. Accordingly, the Motion to Dismiss as to Defendant CHSI is **GRANTED**.

### 2. Dyersburg Ambulatory Corp.

There exists between the parties the most basic dispute as to this defendant: whether or not it exists. Plaintiff's complaint alleges that Dyersburg Ambulatory is a corporation doing

---

[9] Defendants cite numerous cases in support of their arguments against joint employment, many of which were decided not at the motion to dismiss stage, but on summary judgment. (*E.g.*, ECF No. 26 at 8 (citing *Phipps v. Accredo Health Group, Inc.*, No. 2:15-cv-02101-STA-cgc, 2016 WL 3448765, at *10 (W.D. Tenn. June 20, 2016); *Molina v. Hentech, LLC*, No. 6:13–cv–1111–Orl–22KRS, 2015 WL 1242790, at *6 (M.D. Fla. Mar. 18, 2015); *Artis v. Asberry*, No. G–10–323, 2012 WL 5031196, at *6 (S.D. Tex. Oct. 16, 2012). This distinction matters greatly because of how different the two standards are.

business in Tennessee, and notes that its name is listed on his pay statements and W-2 tax forms. (ECF No. 1 at 5, 13.)  Defendants explain that "'Dyersburg Ambulatory Corp.' is a fictitious name that was at one time used as an internal name or nomenclature to reference emergency medical services around the time of 2003-2004," and confirms that the name is "printed on pay statements issued to employees of Ambulance Services of Dyersburg, Inc." (ECF No. 26 at 13.)  Plaintiff responds to this by reiterating the allegations in the complaint and stressing that "Plaintiff should have an opportunity to refute Defendants' assertions" and take further discovery.  (ECF No. 34 at 9.)  Thus, Plaintiff appears to continue to assert that Dyersburg Ambulatory exists.

"[A] corporation does not exist as a legal entity until incorporated,"  *Rees v. Mosaic Techs., Inc.*, 742 F.2d 765, 768 (3d Cir. 1984), and "[t]he corporate existence of a Tennessee corporation begins when the charter of the corporation is filed by the secretary of state," *Duck River Pres. Ass'n v. Tennessee Valley Auth.*, 410 F. Supp. 756, 757 (E.D. Tenn. 1974); *see* Tenn. Code Ann. § 48-11-301.  A foreign corporation doing business in Tennessee also must file with the Secretary of State.  *Sharper Impressions Painting Co. v. Yoder*, No. M2015-00841-COA-R9-CV, 2016 WL 5210867, at *2 (Tenn. Ct. App. Sept. 19, 2016).  The Court has conducted an online "business information search" for corporations authorized to do business in Tennessee on the website of the Tennessee Secretary of State.  *See* Business Information Search, https://tnbear.tn.gov/Ecommerce/FilingSearch.aspx (last visited Aug. 9, 2017).  Several searches of various spellings and combinations of words related to "Dyersburg Ambulatory Corp." yielded no results.[10]

---

[10] If a corporation "is not listed on the website of the Tennessee Secretary of State . . . [it]

15

These searches confirm that no corporation named "Dyersburg Ambulatory Corp." is authorized to do business in Tennessee, and the Court may consult such public records while continuing to evaluate the motion to dismiss as such. *Rondigo*, 641 F.3d at 681. In light of this evidence, Plaintiff's continued assertion that Dyersburg Ambulatory Corp. does exist is the sort of "legal conclusion[] or unwarranted factual inference[]" that the Court need not accept as true. *Morgan*, 829 F.2d at 12. The Motion to Dismiss as to Dyersburg Ambulatory Corp. is **GRANTED.**

IV. **CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**, as Dyersburg Ambulatory and CHSI are dismissed from this case while dismissal of CHSPSC and Knoxville HMA is denied.

IT IS SO ORDERED this 22nd day of August, 2017.

> **s/ S. Thomas Anderson**
> S. THOMAS ANDERSON
> CHIEF UNITED STATES DISTRICT JUDGE

---

may be an unincorporated business entity." *Grange Ins. v. Walton Transp.*, No. 3:13-CV-977-J-34MCR, 2015 WL 1524042, at *2 (M.D. Fla. Apr. 2, 2015). But Plaintiff's complaint specifically alleges that "Dyersburg Ambulatory Corp. is a corporation doing business in Tennessee," which would be subject to the filing requirement. (ECF No. 1 at 5).