## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN SUTTON, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 1:16-cv-01318-STA-egb |
| CHSPSC, LLC, a/k/a Dyersburg Ambulatory Corp., f/k/a Community Health Systems Professional Services, KNOXVILLE HMA HOLDINGS, LLC, a/k/a Dyersburg Ambulatory Corp., d/b/a Tennova Healthcare, LLC, DYERSBURG HOSPITAL CORPORATION, a/k/a Tennova Healthcare – Dyersburg Regional, a/k/a Dyersburg Regional Medical Center, a/k/a Ambulance Service of Dyersburg, and AMBULANCE SERVICES OF DYERSBURG, INC., f/k/a Dyersburg Regional EMS, d/b/a Tennova EMS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants' Motion for Summary Judgment (ECF No. 79), seeking dismissal of all of Plaintiff's claims. In this class action under the Fair Labor Standards Act (the "FLSA"), Plaintiff, on behalf of himself as well as those similarly situated, seeks compensation for minimum-wage and overtime violations of the FLSA. Plaintiff also brings an individual retaliation claim under the FLSA. Defendants ask for summary judgment as to two of their number on the basis that those Defendants are not direct employers of Plaintiff or the class members. Defendants also seek summary judgment on all of Plaintiff's claims on the basis that

the undisputed facts demonstrate that Plaintiff can sustain no minimum-wage violation, overtime violation, or *prima facie* case of retaliation. Defendants argue in the alternative as to the retaliation claim, that even if Plaintiff establishes a *prima facie* case, Defendants have a legitimate, non-retaliatory basis for their actions, and Plaintiff cannot establish that such a basis was merely a pretext under the undisputed facts. The Court does not reach the issue of which Defendants employed Plaintiff because it finds that Plaintiff has failed to establish any of his claims. Accordingly, Defendants' Motion is **GRANTED**. And Plaintiff's claims are hereby **DISMISSED**.

## BACKGROUND

### I.    The Parties' Statements of Facts

In their Responses to Plaintiff's Statement of Additional Facts (ECF No. 101), Defendants complained about Plaintiff's Response (ECF No. 95) to Defendants' Statement of Facts (ECF No. 82). Defendants first claim that Plaintiff has cited "to documents that are either not part of the record or Plaintiff[] do[es] not identify where they are part of the record." Defs.' Resps. to Pls.' Statement of Add'l Facts, at 1, Apr. 11, 2018, ECF No. 101. Defendants next complain that Plaintiff's Statement "is not 'concise' as required by Local Rule 56.1(b)." *Id.* at 2. As discussed below, the Court finds Defendants' complaints to be meritorious. But, even though Plaintiff makes no complaint in this regard against them, Defendants also seem to have trouble with brevity and omitting arguments from their responses. It seems to the Court that neither party has complied with the explicit instructions in Local Rule 56.1.

Local Rule 56.1(a) requires that any motion for summary judgment be "accompanied by a separate, *concise* statement of the material facts as to which the moving party contends there is no genuine issue for trial." W.D. Tenn. R. 56.1(a) (emphasis added). Any party opposing

summary judgment must respond to each fact stated by the movant by agreeing that it is undisputed, agreeing that it is undisputed for purposes of ruling on the summary judgment motion only, or by demonstrating that the fact is disputed, with specific citations to the record. W.D. Tenn. R. 56.1(b). "Failure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for purposes of summary judgment." W.D. Tenn. R. 56.1(d). If a party responds but "fails to *properly* support an assertion of fact or fails to *properly* address another party's assertion of fact . . . the [C]ourt may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2) (emphasis added).

The purpose of a statement of facts is "*to assist the Court* in ascertaining whether there are any material facts in dispute." W.D. Tenn. R. 56.1(a) (emphasis added). A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994)). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite to particular parts of the record and show that the fact fails to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support the purported fact. Fed. R. Civ. P. 56(c)(1).

As the non-moving party, Plaintiff was required to respond to Defendant's statements of fact "by either[] (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." W.D. Tenn. R. 56.1(b). And when Plaintiff asserts that a genuine dispute of material fact exists, he must support his contention with a "specific citation to the record." W.D.

Tenn. R. 56.1(b).  Any party, however, may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).

If Plaintiff fails to demonstrate that a fact is disputed or fails to address Defendants' statement of facts properly or if Defendants fail to address Plaintiff's statement of additional facts properly, the Court will "consider the fact undisputed for purposes" of ruling on the motion. Fed. R. Civ. P. 56(e)(2); *see also* W.D. Tenn. R. 56.1(d) ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment.").

A response to an opponent's statement of fact is *not* the place for additional facts or for argument.  Indeed,

> [t]he parties' concise statement of facts has been of little assistance to the Court since the statements themselves are for the most part not concise statements of facts, but rather, compound statements including statements of judgment, opinion, and legal argument.  The responses for the most part have been lengthy arguments and objections.  At times, rather than simply saying "denied" with a citation to the record, the responding party has gone on for several paragraphs, making a legal argument.  None of this helps the Court determine what facts are in dispute and which are not.

*See Boyd v. Reed Landscaping, Inc.*, 2016 WL 5404765, at *1 (M.D. Tenn. Apr. 26, 2016) (Brown, M.J.), *rep. & rec. adopted in part, rejected in part*, 2016 WL 5404642 (M.D. Tenn. Sept. 27, 2016).

Defendants are correct that Plaintiff improperly supports its Responses with citations such as "ASD 28977" or "Sutton 000299" "without identifying whether ASD 28977 [or Sutton 000299] is part of the record."  Defendants are also correct that Plaintiff's Response to their Statement of Facts is replete with improper argument.  But Defendants are not innocent in this

regard either.[1]  And the Court would add to Defendants' complaints that Plaintiff substantively repeats a number of Defendants' factual statements in his Statement of Additional Facts.  As this Court stated in a previous case, "[a]rgument in responses to statements of material facts clouds issues."  *Maverick Grp. Mktg., Inc. v. Worx Envtl. Products, Inc.*, 99 F. Supp. 3d 822, 827 (W.D. Tenn. 2015).

To the extent that Plaintiff has presented any facts in his Response that are not material to the issues presented by Defendants' Motion, not supported by proper citations to the record, or contain improper arguments, the Court will disregard those facts except as necessary to provide context or background.  *C.f. Hillman v. Shelby Cty.*, 2012 WL 681778, at *1 (W.D. Tenn. Feb. 29, 2012) ("[C]ourts in the Western District of Tennessee do not strike inadmissible portions of affidavits; instead, they disregard the inadmissible testimony in their evaluation of the summary judgment motion before them.").  The Court will do likewise with Defendants' responses to Plaintiff's Statement of Additional Facts since Defendants also have failed to comply with the requirements of Local Rule 56.1 by including argument and extraneous material in its responses.

The Court is sympathetic to the onerous task that counsel has in preparing for these motions.  But if the purpose of statements of facts is to assist the Court, counsel must prepare statements consistent with that purpose.

## II.    Undisputed Facts of the Case

The Court has concluded that the following material facts are undisputed by the parties. As indicated in Part I of this Section of the Court's Order, a number of the parties' purported factual disputes have been disregarded by the Court for the parties' failure to comply with Local

---

[1] To their credit, Defendants do not appear to stray so far afield as to make *legal* arguments, but many of their lengthy responses to Plaintiff's Statement of Additional Facts go beyond mere dispute to such an extent that the issues are clouded just the same.

Rule 56.1.  The Court has also omitted additional facts raised by one or both parties immaterial to the issues resolved in the present Order.[2]  Any remaining factual disputes are immaterial to the resolution of Plaintiff's claims.

Defendants in this case are CHSPSC, LLC, Knoxville HMA Holdings, LLC, Dyersburg Hospital Corporation, and Ambulance Services of Dyersburg, Inc.  Plaintiff Stephen Sutton has filed suit on behalf of himself and other emergency medical technicians or paramedics employed by Defendants.  Plaintiff and the class members provide emergency services to patients in the West Tennessee area—primarily Dyer County, Tennessee.

A paramedic assigned to a 24-hour shift was considered on the clock from 7 a.m. to 11 p.m., earning for each hour his regular hourly rate, plus an overtime premium if applicable.  At 11 p.m., the paramedic was to clock out and go on what is called "sleep time."  During this time, the paramedic was paid $2.00 per hour.  Sleep time ran from 11 p.m. until 7 a.m.  If a paramedic was called to duty during sleep time, the paramedic clocked in, was paid his regular hourly rate plus an overtime premium, if applicable, and then clocked back out after the work was performed.  If the paramedic worked more than 3 hours during sleep time, then the paramedic was paid his or her regular hourly rate plus overtime premium, if applicable, for the entire 24-hour shift.  During the relevant period of December 16, 2013, to December 16, 2016, and excluding sleep time pay, the lowest base hourly wage paid to one of the paramedics was $11.05 per hour.  Hours worked for each shift were recorded by a paramedic on a handwritten timesheet; time was also tracked digitally and contemporaneously by the paramedic sliding a card through a digital reader.  The paramedics verified the accuracy of their time worked by signing off on their

---

[2] The omitted facts pertained to such issues as which Defendant entity or entities actually employed Plaintiff or to whether the sleep time hours actually qualify for an exemption under the FLSA.  The Court's conclusions in this Order preclude the need to resolve these issues.

handwritten time sheets and by signing off that their time worked as recorded in the digital timeclock was accurate.  A supervisor would then compare the handwritten time sheet to the digital timeclock and approve the time.  When a paramedic is called to duty during sleep time, the paramedic writes on his timesheet the time he began and the time he concluded the run (including the additional time required to complete the paperwork).[3]  Beverly Ray, the Hospital's Director of Human Resources, informed Farron Stewart, one of the class members, that if he was awakened and not able to get to sleep, then he needed to write it down as time worked and the paramedics would be paid "for whatever they put on their time card."  In March 2016, EMS Director Jerry Ballhagen instructed the paramedics to write the time down on their time sheets during sleep time that they were "disturbed."  Ballhagen never told the paramedics that they could not clock in when their sleep was interrupted.  It was left to the paramedics' discretion about whether to write down on their time sheets whether they were disturbed during sleep time. When interruptions were included on a timesheet, the items were paid as if time had been worked.  In the employee handbook, the paramedics were instructed under the "Pay Corrections" policy, that "an employee is required to immediately report any errors on his/her paycheck to his/her supervisor or Department Director."  The employee handbook contained a "grievance resolution" policy that allowed employees to file grievances concerning issues with their employment.  Before the lawsuit was filed, only Plaintiff and two of the class members had complained to the EMS Director or the HR Director about the sleep time policy.  Neither

---

[3] Here, Plaintiff states that they were permitted only thirty minutes to complete post-call paperwork, but his citations to the record are improper (Sutton 00023 and ASD 29205) or non-existent (Ex. F p. 62).  In Exhibit F to Plaintiff's Response (ECF No. 95-6) the deposition skips from 61 to 64, and the exhibit itself contains only eight pages.  The Court can find possible support for Plaintiff's dispute here as page 61 ends with "The attendant will be allowed 30 minutes during sleep time" and page 64 begins with "you finish the paperwork while you were still on the clock?"  But doing so would require the Court to inappropriately make assumptions about what was said in the intervening pages.

Plaintiff nor any of the class members had filed formal grievances under the grievance policy concerning the sleep time policy.

In February 2016, Plaintiff was accused of shouting inappropriately at a nurse.  The same month, Plaintiff reported a compliance issue regarding patient safety due to the temperature of the ambulances.  Also in February 2016, Plaintiff reported that the ambulances were dirty.  Plaintiff, however, was scheduled to work as normal from February 2016 to May 2016.

On June 29, 2016, Plaintiff e-mailed Ballhagen and others, requesting a copy of departmental policies and wanting to address "outstanding payroll issues."  On July 1, 2016, Ballhagen responded and requested that Plaintiff forward him "some available dates and times over the next couple of weeks" to setup a meeting to discuss Plaintiff's concerns.  Later that day, Plaintiff responded to Ballhagen's e-mail but did not provide his availability to meet.  Instead, Sutton alleged that Ballhagen was trying to force Plaintiff to "time out" by not putting him on the schedule.  On July 5, 2016, Ballhagen responded to Plaintiff, asking him to "again, please forward [his] availability for a meeting to discuss [his] concerns."  Plaintiff responded later that day by saying, in part, that he was "off work the whole month of July—which is your choice— we can have yet another meeting next time I'm at work getting paid to deal with these shenanigans."  On July 7, 2016, Ballhagen e-mailed Plaintiff again asking for him to schedule a meeting.  On July 18, 2016, Ballhagen e-mailed Plaintiff stating he saw that Plaintiff was on the schedule in August and that the next step was for Plaintiff to schedule a meeting with him.  Ballhagen also stated that Plaintiff was being removed from the schedule for now and asked Plaintiff when he would like to meet.  On July 29, 2016, Plaintiff e-mailed Ballhagen, saying he was now "more than willing" to meet with Ballhagen and alleged that his removal from the schedule in August was retaliation.  On August 3, 2016, Ballhagen responded and stated there

had not been any retaliation but rather he was waiting on Plaintiff to schedule a meeting to discuss his concerns and e-mails. Ballhagen offered dates he was available and asked Plaintiff to let him know what dates worked for him. Plaintiff signed a performance improvement plan on August 22, 2016. Plaintiff was placed on this plan for "being negative about co-workers." Going forward, when "communicating electronically or verbally," Plaintiff was to do so "in a mature and respectful manner to students, coworkers, and others." On August 24, 2016, Ballhagen e-mailed his supervisors and backup supervisors informing them that Plaintiff had "now been cleared to work."

Plaintiff later testified he did not have time to meet with Ballhagen in July 2016 because it was summertime, he was about to take a new job, and he had vacations planned. In October 2016, Plaintiff received a below-average evaluation. In November 2016, Plaintiff received a written warning for failing to electronically approve his time sheet. And Plaintiff was ultimately terminated.

## <u>LEGAL STANDARD</u>

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When deciding a motion for summary judgment, the Court must review all the evidence, viewing it in a light most favorable to the nonmoving party and also drawing all reasonable inferences in that party's favor. *Roell v. Hamilton Cty.*, 870 F.3d 471, 479 (6th Cir. 2017) (citing *Watson v. Cartee*, 817 F.3d 299, 302 (6th Cir. 2016)); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court "may not make credibility determinations nor weigh the evidence." *Laster v. City of Kalamazoo*, 746

F.3d 714, 726 (6th Cir. 2014).  "The burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by 'showing . . . that there is an absence of evidence to support the nonmoving party's case.'"  *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but instead must present some "specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324; *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The Court must, however, enter summary judgment "against a party who fails to . . . [meet the burden] that party will bear . . . at trial."  *Celotex Corp*, 477 U.S. at 322.

## ANALYSIS

In his Verified Complaint, Plaintiff raises three FLSA claims against Defendants:  (1) a class-action claim for violation of the FLSA's minimum-wage requirements; (2) a class-action claim for violation of the FLSA's overtime-wage requirements; and (3) a personal retaliation claim.  The Court has determined that no issue of material fact exists in this case.  And in the disputed facts, Plaintiff has not established any of his claims because there is no evidence that Defendants paid any class member below the minimum wage, Defendants refused to pay overtime wages when owed, or that Defendants removed Plaintiff from his work schedule in retaliation for reporting these alleged FLSA violations.  Accordingly, Defendants are entitled to judgment as a matter of law.

## I.      Class Minimum Wage Claim

The FLSA requires "[e]very employer [to] *pay to each of his employees* who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at . . . *not less than . . . $ 7.25 an hour . . . .*" 29 U.S.C. § 206(a)(1)(C) (emphasis added).  "The statute does not expressly provide for any unit of time over which the amount of compensation received can be averaged against the number of hours worked, in order to determine whether or not the average compensation per hour equals the minimum wage provided."[4]  *Travis v. Ray*, 41 F. Supp. 6, 9 (W.D. Ky. 1941).  But "several courts have held that an employer meets the minimum wage requirements if the total weekly wage paid is equal to or greater than the number of hours worked in the week multiplied by the statutory minimum hourly rate."  *U.S. Dep't of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 780 (6th Cir. 1995) (citations omitted).   Without arguing that sleep time is exempt from the minimum-wage requirements of the FLSA, Defendants argue that those requirements are nonetheless satisfied because the weekly average of the hourly wages paid is still above the minimum wage.  Defendants further rely on *Ruffin v. Motorcity*, 2012 WL 12929819, at *2–3 (E.D. Mich. Nov. 19, 2012), in asserting that the Court is obligated to apply this weekly method of wage calculation.  Plaintiff does not specifically address these arguments in his Response, although he implicitly asserts that *each hour* of wages paid must meet the FLSA's minimum in his claims.

The first question, therefore, is whether this Court is bound by *Cole Enterprises* to apply the weekly method of wage calculation?  And if not, the second question is whether the weekly method is nonetheless the proper method to apply?  And finally, if the answers to the prior

---

[4] The Court discusses this reading of the statute in Section I.B of this Part of the Order.

questions are both in the negative, the third question is what is the proper test for wage calculation under the FLSA?  The Court need not reach this final question because it holds, while *Cole Enterprises* did not adopt the weekly method, the weekly method is the proper test according to the plain language of the statute.  Accordingly, the Court finds that the undisputed facts demonstrate that Defendants did not violate the FLSA's minimum wage provision and they are entitled to summary judgment on that issue.

### A.    Whether This Court Is Bound By *Cole Enterprises*

The Court understates the matter by saying that it is well-settled law that a lower court must strictly obey and apply the decisions of a higher court in the lower court's jurisdiction.  *See, e.g.*, *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be."); *Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 348 (1st Cir. 2004) (quoting *Gately v. Massachusetts*, 2 F.3d 1221, 1226 (1st Cir. 1993)) ("[T]he ruling of *law* in a case [is] binding in future cases before the same court or other courts owing obedience to the decision."); *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed. Cir. 1993) (citation omitted) ("*Stare decisis* in essence 'makes each judgment a statement of the law, or precedent, binding in future cases before the same court or another court owing obedience to its decision.'"); Bryan A. Garner, et al., *The Law of Judicial Precedent* § 2 (2016) ("[A] federal district court must follow the decisions of the federal circuit court in the same jurisdiction, as well as Supreme Court precedent."); *cf. Railey v. Webb*, 540 F.3d 393, 427–28 (6th Cir. 2008) (Moore, J., dissenting) (citing *Hutto*, 454 U.S. at 375) (chastising the majority for deserting its "duty as an intermediate appellate court to follow the precedent of the Supreme Court.").  As a federal trial court situated within the Sixth Circuit,

this Court is bound to follow the precedent of the United States Court of Appeals for the Sixth Circuit and the Supreme Court of the United States.   "The *holding* of an appellate court constitutes the precedent, as a point necessarily decided."    Garner, et al., *supra*, § 4.  Unfortunately, though perhaps not surprisingly, the courts have not always been clear as to what a holding consists of.  *Id.*

> Part of the problem is that commentators and judges don't uniformly define what counts as a holding.  At times, judges say that the holding consists of only those legal propositions absolutely necessary to the result.  At other times, courts give a holding a more capacious meaning, including within it all the legal propositions that were actually found applicable to a decision, that were based on the case-specific facts, and that led to the result—whether or not they were strictly necessary.  This latter view permits a single decision to stand for alternative rationales.

*Id.* (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996); *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc); Ruggero J. Aldisert, *Precedent: What It Is and What It Isn't; When Do We Kiss It and When Do We Kill It?*, 17 Pepp. L. Rev. 605, 609 (1990)) (emphasis omitted).  For example, in *Seminole Tribe of Florida*, the Supreme Court majority addressed criticism from the dissenting justices that it relied on mere dicta by stating that it had adhered to "the well-established rationale upon which the Court based the results of its earlier decisions. . . . [because] it is not only the result but also those portions of the opinion necessary to that result by which [the courts] are bound."  517 U.S. at 67 (citing *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 613 (1990) (plurality); *Cty. of Allegheny v. ACLU*, 492 U.S. 573, 668 (1989) (Kennedy, J., concurring in part and dissenting in part); *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 490 (1986) (O'Connor, J., concurring)).  But the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit") appears to have taken this definition a step further.  In *Johnson*, the Ninth Circuit held that when it "[(1)] confronts an issue germane to the eventual resolution of the case, and [(2)] resolves it after reasoned

consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense."  256 F.3d at 914.  This view not only removes the question of necessity for relevant questions that the appellate court resolves in its opinion but also embraces the court's entertainment of hypotheticals.

And it is the Ninth Circuit's view that Judge Stephen J. Murphy III of the United States District Court for the Eastern District of Michigan (the "Eastern District of Michigan") appears to take in his analysis of whether the Sixth Circuit adopted the weekly method of calculation in *Cole Enterprises*.  *Ruffin v. Motorcity*, 2012 WL 12929819, at *2–3 (E.D. Mich. Nov. 19, 2012).  Judge Murphy focuses on the fact that the Sixth Circuit applied the weekly method.  *Ruffin*, 2012 WL 12929819, at *3.  In Judge Murphy's view, that application trumps the Sixth Circuit's non-committal "several courts have held."  *Cole Enterprises, Inc.*, 62 F.3d at 780; *Ruffin*, 2012 WL 12929819, at *3.  In that sense, his analysis seems correct.  *See, e.g.*, Aldisert, *supra*, at 607 (explaining why "*stare decisis* means what the court *did,* not what it *said*"); Henry Campbell Black, *Handbook on the Law of Judicial Precedents* 37 (1912) ("It is the decision in a case, and not the opinion of the court, which makes the precedent.").  But the Court ultimately remains unconvinced.  And it will thoroughly examine *Cole Enterprises* to illustrate why.

As recounted by the Sixth Circuit,

> On June 4, 1992, the Secretary of Labor filed a complaint against Cole Enterprises, Inc. d/b/a the Echo Restaurant, and William C. Cole, the president and 50% shareholder of Cole Enterprises, Inc.  The complaint alleged violations of the minimum wage and record keeping provisions of [the FLSA]. The Secretary requested an injunction permanently enjoining further violations of [the] FLSA and restraining Cole Enterprises, Inc., and William C. Cole from continuing to withhold unpaid minimum wages that were due their employees for the period June[] 1990, through August[] 1992.  A bench trial was held on November 9–11, 1993.  On December 2, 1993, the district court entered judgment in favor of the Secretary, awarding $3,466.10 in back wages plus prejudgment interest, and granting a permanent injunction.  On February 1, 1994, the district court entered an amended judgment in the amount of $4,400.88, and incorporated

an exhibit showing the total amount of back wages and interest due each of fourteen employees.

*Cole Enterprises, Inc.*, 62 F.3d at 777–78 (footnote omitted).   On appeal, the *Cole Enterprises* defendants raised three purported errors of the district court.  *Id.* at 777.  First, William C. Cole was not an employer within the meaning of the FLSA.  *Id.*  Second, the trial court erroneously shifted the burden of proof to defendants.  *Id.*  And third, the evidence showed no violation of FLSA.  *Id.*  It is in this last assignment of error that the weekly-calculation method arises.  *Id.* at 780.

In Section III.A of the Sixth Circuit's opinion, the appellate court addressed the defendants' arguments that the evidence presented to the trial court did not support its conclusions that the defendants failed to compensate its waiters and waitresses for the, on average, half-hour of work performed daily outside their scheduled shift hours.  *Id.* at 779.  After rejecting the defendants' first argument "that no pre-shift or post-shift work was performed by the employees" and the defendants' second argument that such work was *de minimis*, the Sixth Circuit reached the defendants' last argument for this issue:  "that the employees' total weekly wage met the minimum wage requirements . . . ."  *Id.* at 779–80.  The Sixth Circuit noted that FLSA sets a "minimum wage in terms of an hourly rate," but "several courts have held that an employer meets the minimum wage requirements if the total weekly wage paid is equal to or greater than the number of hours worked in the week multiplied by the statutory minimum hourly rate."  *Id.* at 780 (citing 29 U.S.C. § 206(a); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986); *Dove v. Coupe*, 759 F.2d 167, 171 (D.C. Cir. 1985); *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960); *Cuevas v. Monroe St. City Club, Inc.*, 752 F. Supp. 1405, 1416–17 (N.D. Ill. 1990); *Travis v. Ray*, 41 F. Supp. 6, 9 (W.D. Ky. 1941)).   And in applying the test proffered by the defendants, the Sixth

Circuit found that the defendants failed to even satisfy it.  *Id.* ("[T]he hourly wage paid for the scheduled shift hours equalled the minimum wage rate, but did not exceed it, so that the total weekly wage did not meet the minimum wage requirements once the pre-shift and post-shift work was considered.").

Clearly, the Sixth Circuit did not say it was adopting the weekly method.  And it was far from necessary to the appellate court's decision to adopt it when considering the third alternative argument of the third assignment of error in a challenge to the trial court's finding.  The Sixth Circuit ruled against those defendants in every aspect of their appeal, including the defendants' own test.  Thus, it was not necessary to adopt the test to resolve the case.  The Sixth Circuit merely entertained the defendants' proffered test and demonstrated that even then they could not prevail.  Though such actions would perhaps make the test binding under the standards of the Ninth Circuit, the weekly method of calculation was not adopted by the Sixth Circuit under any traditional view of precedent.  Accordingly, the Court holds that it is not bound by the Sixth Circuit's "application" of the weekly method of wage calculation in *Cole Enterprises*.

### B.    Whether the Weekly Method Is the Proper Test

The next question is whether the weekly method is nonetheless the proper test for determining a minimum wage violation.  In setting forth that "several courts have held" the weekly method to be the proper method of wage calculation, the Sixth Circuit cited to cases from the United States Courts of Appeals for the Eighth, D.C., and Second Circuits (the "Second Circuit"), as well as the United States District Courts for the Northern District of Illinois and the Western District of Kentucky (the "Western District of Kentucky").  *Cole Enterprises, Inc.*, 62 F.3d at 780.  The courts in these cases, as well as others involving the weekly method of wage calculation, seem to all draw their reasoning from either the Western District of Kentucky in *Ray*

*v. Travis*, 41 F. Supp. 6, 9 (W.D. Ky. 1941), or the Second Circuit in *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490–91 (2d. Cir. 1960). *See, e.g.*, *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986); *Dove v. Coupe*, 759 F.2d 167, 171 (D.C. Cir. 1985); *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1197–98 (4th Cir. 1969); *Cuevas v. Monroe Street City Club, Inc.*, 752 F. Supp. 1405, 1416–17 (N.D. Ill. 1990); *Marshall v. Sam Dell's Dodge Corp.*, 541 F. Supp. 294, 302–03 (N.D.N.Y. 1978). In *Klinghoffer Brothers*, the Second Circuit concluded that the weekly method of calculation was correct in light of the underlying "Congressional purpose" of the FLSA as evidenced by its legislative history.[5] *Klinghoffer Bros. Realty Corp.*, 285 F.2d at 490 (citing Conference Report, H.R. Rep. No. 2738, 75th Cong., 3d Sess., at 28 (1938); S. Rep. No. 884, 75th Cong., 1st Sess., at 1–3 (1937); H.R. Rep. No. 1452, 75th Cong., 1st Sess., at 8–9 (1937)). "But legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018). "It is the business of Congress to sum up its own debates in its legislation, and once it enacts a statute [w]e do not inquire what the legislature meant; we ask only what the statute means." *Id.* (quoting *Schwegmann Brothers v. Calvert Distillers Corp.*, 341 U. S. 384, 396–97 (1951) (Jackson, J., concurring)) (internal quotation marks omitted). Accordingly, the Court should not be and is not persuaded by this line of reasoning.

On the other hand, the Western District of Kentucky gave great weight to the opinion of the Wage and Hour Division of the Department of the Labor in adopting the workweek as the

---

[5] The minimum-wage provision, according to the Second Circuit, was meant "to guarantee a minimum livelihood to the employees covered by the Act." *Klinghoffer Bros. Realty Corp.*, 285 F.2d at 490 (citations omitted). Thus, the appellate court reasoned, "the Congressional purpose is accomplished so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute" because "[p]ayment at intervals shorter than weekly is unusual and is not necessary to enable the employees to meet their customary obligations." *Id.*

calculating period for the minimum wage.  *Travis*, 41 F. Supp. at 9 (citing *United States v. Darby*, 312 U.S. 100, 118 (1941); *United States v. American Trucking Ass'n*, 310 U.S. 534, 549 (1940)).  In addition to relying on the Second Circuit's misguided reasoning, the United States District Court for the Northern District of New York (the "Northern District of New York") also applied the Western District of Kentucky's reasoning to a subsequent but substantially identical interpretation from the Secretary of Labor.  *Marshall*, 451 F. Supp. at 302 (quoting 29 C.F.R. § 778.104) ("Likewise, the Secretary's regulations implementing section 7 of the Act base compliance on the workweek.  'The Act takes a single workweek as its standard and does not permit averaging of hours over two or more weeks.'").  In doing so, the Northern District of New York, explained the effect of *Skidmore* deference:[6]  "the Secretary's interpretations of the Act, although not binding on the court, are entitled to great weight."  *Id.* (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944)); *see also Travis*, 41 F. Supp. at 9 ("The interpretation of a new statute by the Department charged with its administration, while not controlling upon the court, is entitled to great weight.").  The same interpretation referred to by the Northern District of New York remains in effect now and is entitled to the same respect owed then.  Thus the Court must keep the Secretary of Labor's position in mind as it considers this question on its own.

When resolving what the FLSA requires, "[a]s with any question of statutory interpretation, [the Court] must first look to the language of the statute itself."  *Brilliance Audio,*

---

[6] "*Skidmore* deference" should not be confused with the actual deference owed under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984).  *But see Pereira v. Sessions*, 585 U.S. ___, 2018 U.S. LEXIS 3838, at *33–34 (June 21, 2018) (Kennedy, J., concurring) ("Given the concerns raised by some Members of this Court, it seems necessary and appropriate to reconsider, in an appropriate case, the premises that underlie *Chevron* and how courts have implemented that decision.").  Under *Skidmore*, the agency's interpretation is owed "respect."  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

*Inc. v. Haights Cross Communs., Inc.*, 474 F.3d 365, 371 (6th Cir. 2007) (citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (1992); *Cox v. Mayer*, 332 F.3d 422, 424 (6th Cir. 2003)).  As stated previously, the FLSA provides:

> Every employer shall pay to each of his employees who *in any workweek* is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at . . . not less than . . . $ 7.25 an hour . . . .

29 U.S.C. § 206(a)(1)(C) (emphasis added).  The Court respectfully disagrees with the Western District of Kentucky's conclusion that the statute is silent as to the "unit of time over which the amount of compensation received can be averaged . . . in order to determine whether or not the average compensation per hour equals the minimum wage provided."  *Travis*, 41 F. Supp. at 9. While the FLSA does not expressly render an equation unto the courts, this Court thinks the utilization of the phrase "in any workweek" is sufficiently clear.

The Court must, if possible, give effect to every word in a statute.  *United States v. Perry*, 360 F.3d 519, 537 (6th Cir. 2004) (citations omitted); *see also Market Co. v. Hoffman*, 101 U.S. 112, 115–16 (1879) (stating that "no clause, sentence, or word shall be superfluous, void, or insignificant"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 26 (discussing this rule as the "surplusage canon," which provides that "[i]f possible, every word and every provision is to be given effect . . . .").  And each word is considered not in isolation but in its proper context.  *United States v. Santos*, 553 U.S. 507, 512 (2008) (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988)).  Here, other courts' readings of this provision of the FLSA seem to disregard "in any workweek" as it appears in the statute.  The Western District of Kentucky goes so far as to suggest that under "a very strict construction [the weekly method] is probably not permitted."  *Travis*, 41 F. Supp. at 9. In doing so, the Western District of Kentucky appears to have emphasized the statutory

19

command to "[e]very employer" to "pay to each of his employees" wages "not less than 25 cents[7] *an hour*." 29 U.S.C. § 206(a)(1)(C); *Travis*, 41 F. Supp. at 9 (emphasis added). While the Western District of Kentucky properly declined to apply a strict construction, *Lynch v. Overholser*, 369 U.S. 705, 710 (1962) (quoting *Utah Junk Co. v. Porter*, 328 U.S. 39, 44 (1946)) ("But 'literalness may strangle meaning.'"); *see also* Scalia & Garner, *supra*, § 62 (quoting 1 Joseph Story, *Commentaries on the Constitution of the United States* § 423 (2d ed. 1858)) ("[W]hat is needed is reasonableness, not strictness, of interpretation . . . ."), this Court finds a different ground—if not *the* ground—to do so that is stronger than deference to an agency interpretation. The Court reads "in any workweek" as providing the relevant time period of the employee's labor for which he must be paid "not less than . . . $ 7.25 an hour." It is in this workweek that the employee is engaged in his labor, and it is in this workweek that he must be paid his wages. Thus, the weekly method of wage calculation seems not only logical but commanded by the statute. To find otherwise—to read "in any workweek" as a mere turn of phrase—is to render the language worthless. This is an effect what the courts generally, but not always, avoid. *See, e.g.*, *Ross v. R.A. North Dev., Inc. (In re Total Realty Mgmt., LLC)*, 706 F.3d 245, 251 (4th Cir. 2013) (quoting *PSINet, Inc. v. Chapman*, 362 F.3d 227, 232 (4th Cir. 2004)) ("Principles of statutory construction require 'a court to construe all parts to have meaning' and, accordingly, avoid constructions that would reduce some terms to mere surplussage."); *Luster v. Collins (In re Collins)*, 170 F.3d 512 (5th Cir. 1999) ("The canons of interpretation are suspicious of surplussage. But we cannot allow these canons to produce absurd results when a legislature has sought to make a statute crystal clear rather than just clear."); *Heaps v. Nuriche, LLC*, 345 P.3d 655, 661 n.6 (quoting *In re Estate of Nash*, 220 S.W.3d 914, 918 (Tex. 2007))

---

[7] The minimum wage has obviously changed since the Western District of Kentucky issued its decision in 1941.

(citing *Sabre, Inc. v. DOT*, 429 F.3d 1113, 1122 (D.C. Cir. 2005)) ("And although we generally attempt to interpret statutes to avoid surplus language and to give every word in the statute meaning, we recognize that in some instances, the legislature utilizes statutory redundancies to emphasize a point or to 'repeat[] itself out of an abundance of caution.'"); *Malovec v. Hamrell*, 82 Cal. Rptr. 2d 712, 719 (citing *Arnett v. Dal Cielo*, 923 P.2d 1 (Cal. 1996)) ("An appellate court is to interpret a statute where possible to avoid surplus language.").

In the Court's view, the phrase "in any workweek" is a clear invocation of that necessary context of the typical case of employment that frames the lives of most Americans:   the workweek.   The phrase sets the parameters within which the minimum hourly wage must be calculated.   It is only the examinations of the statute by prior courts that gives this Court reason to reflect on the surplussage canon.   At the very least, "in any workweek" should be construed in light of this canon to require the weekly method of calculation.   But the use of this canon is likely unnecessary because the Court sees no point that the phrase "in any workweek" might add emphasis too.   For these reasons, the Court holds that the weekly method of wage calculation is required by the FLSA.

Plaintiff has presented no proof or even argued that, under the weekly method of wage calculation, he or the other class members received less than the minimum wage.   Accordingly, Defendants are entitled to summary judgment on Plaintiff's minimum wage claim.   That claim is hereby **DISMISSED**.

## II.      Class Overtime Wage Claim

Defendants next seek summary judgment on the class claim for violation of the overtime provisions of the FLSA.   Defendants' argument is that, because the class plaintiffs are seeking compensation for hours allegedly worked but not claimed, the plaintiffs cannot prevail under the

FLSA.   According to Defendants, each employee bears some responsibility for ensuring compliance with the FLSA, and, therefore, where they did not claim the overtime hours, the plaintiffs are not entitled to them.  In his Response Memorandum, Plaintiff does not specifically address this argument.  Instead, Plaintiff elaborates on the claim that because Defendants do not meet the sleep time exemption, Defendants improperly and illegally excluded those hours and thereby deprived the class plaintiffs of the overtime wages to which they are entitled.  The Court disagrees.   Because the record shows that Defendants properly paid wages for those hours claimed by the class plaintiffs, Defendants are entitled to summary judgment on Plaintiff's claim.

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."   29 U.S.C. § 207(a)(1).   Plaintiff maintains that Defendants violated this provision by failing to compensate the class plaintiffs for all work performed in excess of forty hours by the statutorily mandated rate.  Ver. Compl. for Violation of the Fair Labor Standards Act, ¶ 70, Dec. 16, 2016, ECF No. 1.  But Defendants seek summary judgment on this claim on the basis that it is not disputed that the class plaintiffs were paid the required wages for all hours *actually claimed*.  Defendants rely on two Sixth Circuit cases, a decision from this Court, and an opinion from the Ninth Circuit for the proposition that an employer must know that its employee is working overtime in order to violate this provision of the FLSA.  *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 875 (6th Cir. 2012) (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)); *Wood v. Mid-Am. Mgmt. Corp.*, 192 F. App'x 378, 381 (6th Cir. 2006); *Forrester*, 646 F.2d at 414; *Frye v. Baptist Memorial Hosp.*, 2011 U.S. Dist. LEXIS 52928, at *31 (W.D. Tenn. Sept. 27, 2010),

*aff'd*, 699 F.3d 869 (citing *Wood*, 192 F. App'x at 380)).  As the Court indicated above, Plaintiff does not directly address this argument.  Plaintiff instead sticks to his primary assertion that all sleep time hours constitute hours worked and should contribute to the count of weekly hours paid as overtime.  In this instance, Defendants are correct.  The undisputed facts demonstrate that the class plaintiffs were free to write down hours that they were awake during sleep time as hours worked but did not always do so for a variety of reasons.  Defendants cannot held be held responsible for the class plaintiffs' failure in this regard.  *See White*, 699 F.3d at 875 (quoting *Forrester*, 646 F.2d at 414–15) ("An employer must have an opportunity to comply with the provisions of the FLSA.  This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation.  However, where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of [the FLSA].").  And therefore, as to Plaintiff's overtime-wage claim, Defendants are entitled to summary judgment.

### III.   Plaintiff's Retaliation Claim

Finally, Defendants move for summary judgment on Plaintiff's personal retaliation claim. The FLSA prohibits employers from engaging in unlawful retaliation.  Under the statute, this means that an employer may not "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA] . . . ."  29 U.S.C. § 215(a)(3).   Claims brought under this provision "are subject to the burden-shifting framework of" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429

F. App'x 524, 529–30 (6th Cir. 2011) (citing *Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 483, 489 (6th Cir. 2006)).

> "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the McDonnell Douglas inquiry."  Thus, the plaintiff must first submit evidence from which a reasonable jury could conclude that a prima facie case of discrimination has been established.  The defendant must then offer sufficient evidence of a legitimate, nondiscriminatory reason for its action.  If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination.

*Macy v. Hopkins Cty. Sch. Bd. of Educ.*, 484 F.3d 257, 364 (6th Cir. 2007) (citations omitted).

### A.    *Prima Facie* Case of Retaliation

To establish a *prima facie* case of unlawful retaliation, a plaintiff must demonstrate that: "(1) he . . . engaged in a protected activity under the FLSA; (2) his . . . exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to [him]; and (4) there was a causal connection between the protected activity and the adverse employment action."   *Adair*, 452 F.3d at 489 (citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir. 1999)).

Here, Plaintiff maintains that the undisputed facts demonstrate a *prima facie* case of unlawful retaliation.  Specifically, Plaintiff argues that (1) he engaged in protected activity by reporting violations of the FLSA to Jerry Ballhagen; (2) this activity was known by Defendants because Ballhagen forwarded Plaintiff's complaints to "Beverly Ray, Human Resources, and Ms. Reba Celsor, CEO"; (3) thereafter, Defendants took adverse action against Plaintiff in removing him from the schedule and precluding him from working on future shifts for an extended period; and (4) the close temporal proximity between the complaints and the adverse action is sufficient evidence of a causal connection at this stage.

Defendants first dispute Plaintiff's contentions, claiming that the actions referred to by Plaintiff do not constitute "a materially adverse employment action."  According to Defendants, "[a] materially adverse employment action is any action that might have dissuaded a reasonable employee from making a complaint against the employer."  Mem. of Law in Supp. of Defs.' Mot. for Summ. J., at 21, Feb. 21, 2018, ECF No. 81 (citing *Golden v. Metro. Gov't of Nashville & Davidson Cty.*, 263, F. Supp. 3d 684, 692 (M.D. Tenn. 2017)).  It is otherwise thought of as "a materially adverse change in the terms of . . . employment" such as  "[t]ermination, decrease in wage or salary, change in title, diminished material responsibilities, or a material loss of benefits . . . ."  *Lee v. Cleveland Clinic Found.*, 676 F. App'x 488, 494 (6th Cir. 2017) (quoting *Mensah v. Mich. Dep't of Corr.*, 621 F. App'x 332, 334 (6th Cir. 2015); *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)).  But discipline, according to Defendants, does not qualify. The Court agrees.  In fact, as Defendants point out, "a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (quoting *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007)).  But Plaintiff does not rely on his poor evaluation as constituting the adverse action.  He focuses on his removal from the schedule, pointing to the decrease in wages he was paid because he did not work, relying on *Azkour v. Little Rest Twelve, Inc.*, 2012 U.S. Dist. LEXIS 16039, at *22 (S.D.N.Y. Feb. 7, 2012) (holding that under the FLSA a reduction in the number of shifts an employee is permitted to work and the concomitant loss of wages is an adverse employment action.).  Though not binding, the reasoning of the United States District Court for the Southern District of New York is persuasive here.  *See id.* (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) ("A change in working conditions is considered materially adverse

if it is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"). Undoubtedly, Plaintiff suffered a substantial loss of income by not being able to work, which would constitute a materially adverse employment action.

Defendants next contest the causal connection element of Plaintiff's *prima facie* case, providing a different reason for the adverse action, albeit in different terms. But that argument is inappropriate to this portion of the analysis. As Defendants do not challenge either of the other elements of the *prima facie* case, the Court is satisfied that Plaintiff has stated a *prima facie* case of retaliation, shifting the burden to Defendants.

### B.      Legitimate, Non-Retaliatory Reason for the Adverse Action

It is now Defendants' burden to articulate a legitimate reason not based in retaliation for removing Plaintiff from the work schedule. *See Pettit*, 429 F. App'x at 534 (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802). "The employer's burden at this stage is one of production, not persuasion." *Id.* (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000)). The ultimate burden still rests with Plaintiff, meaning that Defendants need not conclusively establish a non-retaliatory reason for the adverse action taken but only provide such a reason that is consistent with the undisputed facts. *Cf. Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981) ("The burden that shifts to the defendant, therefore, is . . . not [to] persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it [retaliated] against the plaintiff.").

Here, Defendants point to the fact that Plaintiff was pulled off of the schedule to discuss his concerns, but Plaintiff refused to meet or even provide his availability to meet for an extended period. And upon actually meeting with his supervisors, Plaintiff was returned to the work schedule. If established, this basis would be entirely legitimate. Ballhagen removed

Plaintiff from the schedule after receiving Plaintiff's concerns and quickly sought to meet with him.  It stands to reason that 24-hour work shifts could inhibit such a meeting.  It is also logical to seek to resolve an outstanding issue an employee might have before permitting him to continue working.  Thus, the Court is satisfied that Defendants have carried their burden of production.

### C.      Pretext for Unlawful Retaliation

Now that Defendants have satisfied their own burden, Plaintiff must demonstrate that the proffered reason is but a pretext for what was in reality unlawful retaliation against him.  The parties are in agreement as to the standard that Plaintiff must satisfy:

> To raise a genuine issue of fact as to pretext and defeat a summary judgment motion under this position, [Plaintiff] must show that (1) the proffered reason had no factual basis, (2) the proffered reason did not actually motivate Defendants' action, or (3) the proffered reason was insufficient to motivate the action.

*Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 491 (6th Cir. 2006) (citing *Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 589 (6th Cir. 2002)).

Plaintiff indeed argues that Defendants offer the Court but a pretext for the termination because Plaintiff was actually terminated for reporting FLSA violations.  Plaintiff also argues that there is no basis in fact for Defendants' proffered motivation.  In support of these positions, Plaintiff points to the fact that he reported a number of issues in February that Ballhagen wanted to discuss with him, but at that point Plaintiff was never removed from the schedule.  Plaintiff disputes the contention that he was removed from the schedule for behavioral or performance issues because the only documented incident fitting this description occurred in February, and Plaintiff was not removed from the schedule until June after reporting FLSA violations.

Defendants, however, reiterate that the basis for the removal was Plaintiff's continued refusal to meet with Ballhagen.  They claim that the undisputed evidence supports this

contention.   And the Court agrees.   The undisputed evidence shows that Plaintiff contacted Ballhagen to discuss certain "payroll issues," which undoubtedly relate to Plaintiff's allegations of FLSA violations.   Defendants removed Plaintiff from the schedule not because he made the allegations but to discuss Plaintiff's concerns.   The removal only became prolonged because of Plaintiff's refusal to cooperate.   This point is made clear by Plaintiff's restoration to the work schedule following the meeting.

Defendants also dispute that Plaintiff has adequate evidence to support the notion of an ulterior motive, noting that temporal proximity and Plaintiff's subjective beliefs are insufficient. *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012); *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986).   The Court must agree once again.   Plaintiff points to prior complaints made by him or against him that did not result in removal from the schedule.   But Plaintiff's points tend to bolster Defendants' non-retaliatory motive.   After continued problems, Defendants might logically seek a more direct method of addressing them.   In any event, Plaintiff's argument is insufficient to negate the evidence supporting Defendants' stated reason, demonstrate a "true" motive, or otherwise demonstrate Defendants' stated reason as inadequate. Therefore, the Court concludes that Plaintiff has failed to carry his burden.

Accordingly, Defendants are entitled to summary judgment on this claim.   And Plaintiff's retaliation claim is **DISMISSED**.

## CONCLUSION

Because there is no genuine issue of material fact, and because Defendants are entitled to summary judgment, Defendants' Motion is hereby **GRANTED**.   Plaintiff's claims are therefore **DISMISSED**.   Accordingly, all other pending Motions are **DENIED** as moot.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE


Date:  July 5, 2018.

.